The next case for the day is Medina-Araujo v. Sessions, Appeal No. 17-3578. Mr. Gutierrez. Thank you, Judge. May it please the Court, Counsel, Gerardo Gutierrez, on behalf of Mr. Medina-Araujo. Judge, this case comes up on my motion to reconsider and motion to reopen that was denied by the Agency 2 respondent in this case. The motion to reconsider the arguments raised primarily is the Descheny v. Winnebago social services that essentially we're arguing by Mr. Medina agreeing to cooperate with the government, both the federal government and the state government, by agreeing to do that and by the government in turn seeking leave from the district court to have him act as a cooperator that a covenant was made between both the government, the district court, and Mr. Medina to be protected from deportation. Recall. Is there any explicit promise in the record to that effect, Mr. Gutierrez? There is no explicit promise, Judge, but implicit in requesting leave to have Mr. Medina cooperate was the government's position to the judge, to Judge Gettleman in this case, that he would be protected as a quid pro quo for his cooperation. Remember, he's not working off his sentence. His sentence is done. He has no horse in this case other than not to be removed from the United States. So when the government marches in there to Judge Gettleman and says, we need this man for X, Y, and Z reasons, which Mr. Medina-Araujo did provide X, Y, and Z, clearly there's no argument that he didn't provide substantial assistance. He didn't lead the Bruce Forch investigation, wear a wire. Indeed, one of the issues that he was able to bring up to light was to provide information about the DePaul murder that occurred sometime back in 2012. So when Mr. Medina is told that he has leave to cooperate with the government, implicit in that, and repeatedly said, all I care about is not being deported, to be able to stay in the United States- How many times did he testify? I'm sorry, Judge? How many times did he testify? He testified. I don't know the answer. I thought I saw something about a grand jury. He did testify in front of the grand jury. I don't know exactly how many times, Judge. But a lot. But it was a lot. And there were several cases made, including 20 different arrests and prosecutions. So when the government tells me that the prosecutions were successful and everything went swimmingly, well, I called to verify what the FBI's position was on this. And the FBI said, yeah, we gave him the benefit. We kept him here in the United States. We didn't deport him while he was working for us. And, Judge, that seems like a lost leader. It seems like the quid pro quo was, you could stay here in the United States as long as you're working for us. Well, when the day came when he was no longer working for the government, the government then in turn said, okay, fine, you have this criminal history background. I'm not denying that you're per se removable. I don't deny that at all. He was a drug offender, and he had served approximately eight and a half years while in custody. But before I get too far afield on DeShaney, Judge, because that is substantive due process, and that requires an expansion and reading of the way DeShaney is. And I get that, that that's a difficult burden for me to show, other than to suggest that, you know, Judge Gettleman would have never approved this cooperator for this type of benefit if he himself hadn't had reasonable assurances that the government wouldn't just turn around. What's the basis for saying that? Pardon me? What's the basis for saying that? Well, because Judge Gettleman, he repeatedly on the record, and I have this here in the back of sealed transcripts, he repeatedly asked, well, are you going to, it says, Judge is happy to encourage Nacho to be realistic and stay protected when he sees him in court next. Now, those are transcripts that were held in chambers, and his, he appointed an attorney for him, and the basis was he wanted to make sure that Mr. Medina was protected. Obviously, when asked, do you want to go into WITSEC and change your identity, leave your wife and kids behind, Mr. Medina said, no, I don't want WITSEC. I don't want that kind of protection. It's rather easy to have the government not deport you without having to put you in WITSEC. Let me just raise my concerns about this case. Your brief argues primarily the merits of the underlying case here. Yet we're, as I understand it, reviewing a denial of a motion to reconsider and a motion to reopen for relief under the Convention Against Torture. And I don't really, that narrows the issues in front of us. It does. And I don't really see an effective response to two critical issues relied upon by the Board of Immigration Appeals. One is that there simply was insufficient proof of an individualized risk to Petitioner Medina Arroyo in Mexico. And the other is that there was no real response to the failures to comply completely with the Lozada procedural requirements for an ineffective assistance of counsel claim. If you could focus on those, that would be helpful. Let's start, first of all, by the ineffective assistance of counsel, Judge. In my response brief, I thought that that was the easiest thing to show. And by easiest, I don't mean going back into the record and showing all of the mistakes that prior counsel had made. No, what I mean by ineffective assistance of counsel here, Judge, is the fact that on the eve of trial, the counsel that he had retained did a substitution. Did a substitution within 24 to 48 hours before the hearing. And that substitution, while it could have been a great substitution, the new counsel could have been a terrific counsel, there's nothing in the record to suggest that any voir dire of that substitution. Mr. Gutierrez? Sorry. I understand your substantive points, but the BIA, the Board, is relying on the failure to comply with the Lozada procedures. Could you address that? Yes, sir. That is simply not true. The Board simply is incorrect about that. Counsel provided adequate notice to the two parties, the Brian Seyfried and Briseida Hernandez, the two attorneys in question, provided the actual application and affidavit by the defendant to the Attorney Registration and Disciplinary Commission, and provided an opportunity for those two individuals to respond. Now, the two individuals did respond to the ARDC. However, the ARDC sent that response to the jailhouse where the defendant was, and I couldn't submit it with my brief because they were essentially moving my defendant from one jailhouse to another, and eventually, when I did file my application here, they moved him to Texas. They moved him so that he could see Matamoros right across the street from his jailhouse. So if I'm to provide the answer as well, to be completely 100% technically correct, I would have needed that document that was provided, should have been CC'd to me, so that I could have that document. It wasn't until much later that I actually learned that they had indeed responded, and that that response was made available to the ARDC, and the ARDC sent it to chase him along wherever he was, meaning Medina. Where was he? Who knows. But in the end, he could see Matamoros across from his – I apologize. I'm getting dry mouth, but. I know the feeling. Okay. Thank you, Mr. Gutierrez. Do you want to say? Your time has expired. I'll give you a minute for rebuttal. Thank you, Judge. For the government, Mr. Zaidi. Good morning, Your Honors, and may it please the Court. Imran Zaidi for the Attorney General. This case involves two requests by the petitioner, a motion to reconsider, alleging legal error in the Board's previous decision, and a motion to reopen, alleging ineffective assistance of counsel. Now, I'd like to turn to the motion to reopen, alleging ineffective assistance, and really plan to focus primarily on that today, subject, of course, to this panel's questions. With regard to reconsideration, it sounds like counsel agrees and understands that the DeShaney argument is really an expansion of substantive due process. Again, we're happy to address any questions, but otherwise we'll rest on the briefing on that point. With regard to ineffective assistance, Your Honor, there's really, first of all, no serious dispute that petitioner has not complied with the procedural requirements set forth in the matter of Lozada. Most critically, he never, never notified his prior counsel of the allegations of misconduct against them, and therefore did not give them an opportunity to respond. Your Honor, this Court has made very clear that there's two separate requirements. There's four requirements for Lozada, but two of the ones that are at issue here, and they are separate, is notification to the relevant disciplinary authority, and separate from that is notifying prior counsel directly and giving them an opportunity to respond. That's very clear from this Court's authority in Patel.  This is not a technical issue. On technicality, we have literally no notification to prior counsel, no then response from them explaining why they did not do these things that they allegedly should have done, like calling additional witnesses to testify. This Court has made very clear that there are no exceptions to the Lozada requirements. They are a necessary condition to reopening. Now, this case is a textbook example of why those requirements are important. Again, you are alleging that prior counsel should have done these things differently. They should have called these two additional witnesses to testify. We don't have any sense of whether prior counsel did call them to testify or tried to get them to testify, or whether, if not, there was any strategic reason for not doing so. Now, making the Lozada failure here even more problematic is the fact that we don't even have evidence of what those two witnesses would have said, and I want to be very clear about this point. There is no evidence in the record to suggest what these two law enforcement agents, that petitioner claims should have been called, what they would have said. There's no statements in the record, no affidavits, no documents. All we have are counsel's assertions as to what they may have said if they were called to the hearing, and that is exactly the type of danger that Lozada was meant to protect against, is baseless allegations that leave no evidence, no basis in the record for ascertaining the sufficiency of prior counsel's performance. Now, I do want to assure this Court, setting all of that aside, again, this is not merely a technicality, but setting all of that aside, let's look at prejudice. Separate from the Lozada requirements, petitioners still would have needed to show that this may have affected his eligibility for relief had these two witnesses been called. There is, again, an unusual circumstance here where prejudice arguments are usually made based on evidence, evidence attached to a motion to reopen, some statements, some affidavits, some indication of the evidence that would have been included or should have been included. There is none of that. There is just counsel's assertions. Now, let's assume, though, that counsel's assertions as to what these law enforcement agents would have said are evidence. You still have, at best, two law enforcement agents in Chicago speaking to this petitioner's involvement with the government as a cooperator and then possibly to his prospects of harm by these gang members in Chicago. This has simply limited impact, if any, on his prospects of harm in Mexico, and it has zero impact on the Mexican government's likelihood of acquiescing in any of that harm. So we think the prejudice argument here is very clear. We think you don't even need to get there because ineffective assistance requires the Lozada requirements and the Lozada analysis here forecloses any look into the merits of the ineffective assistance case. On the substance of due process claim, the one thing I would like to clarify, again, I'm happy to address the merits of that. I want to make two points about the sort of background here because the due process argument really stems from an assertion of bad faith on the government's part. There is no, as Judge Hamilton, as you pointed out, or as you inquired, there is no evidence in the record that the government ever promised petitioner an S visa. Petitioner himself in his own testimony and in his affidavit never said that the government promised him an S visa. At most, the government said it would help try to do whatever it could during the course of his cooperation, and they did secure him work authorization during that time, and otherwise said they would try to help him get an S visa. Now, the other point is the substantive due process argument is about protection. At the end of petitioner's cooperation, the government offered to place him in the witness protection program. He simply chose to decline that. That was without wife and children. That's correct, Your Honors. That's correct. That's a pretty tough offer. It is, Your Honor, and this is not at all about whether or not that was the right choice or whether or not he was in danger or whether or not that was a fair position to be in. As a result of his cooperation, he was, though, offered that. And so I'm speaking right now to the government's duty to protect him, which is the basis of the substantive due process argument that he makes. His claim then really isn't that the government didn't offer to protect him or didn't protect him. It's that the government didn't offer him the type of immigration status that he wanted, and there is certainly no constitutional right to that.  He was in Chicago, Your Honor. Just where? Where? What's this idea? Was he confined? No, Your Honor. His confinement for his drug offense lasted from, I believe, 1999 until 2008. After that and up until 2017 when he was detained by ICE, he was free. So my understanding is that he was at his home, at his residence, wherever he was. Okay, so all this cooperation times after his incarceration. Correct. That's correct. And this S visa, which I wasn't familiar with, frankly. It didn't run out of him. There's some other reason, I assume, why he didn't get it. I don't know what you have to do to qualify for an S visa. No, Your Honor. Right, Your Honor. My understanding is it's a very difficult visa to get. It is for witnesses or informants. Your criminal history is very relevant to being able to get that. My understanding is, of course, the people who get that are very often people who have a criminal history. But it's a difficult visa to get. My understanding is that based on the severity of his offenses in the past, his drug trafficking offense, he was an unlikely candidate. But beyond that, I'm not actually sure what else. There's very little on the record as to what exactly happened other than the claims raised in Petitioner's opening brief. If there are no further questions, Your Honor, we ask that the Court deny this petition for review. All right, thank you very much, Mr. Zaidi. Mr. Gutierrez, rebuttal. Take a minute. One of the things in that ARDC complaint that is telling is a note, a handwritten note, from Mr. Seyfried to Genevieve, his wife, Mr. Medina's wife. And in that, he is promising Genevieve that he will subpoena the FBI agent in charge, who was Patrick Staley. Now, promising in writing, or in a note, to actually subpoena somebody who could shed light on the extent of the cooperation, the relevant connection between the gang in Chicago and the cartel in Mexico, the connection between my client, the FBI, and former people who had been in a similar situation who were murdered. FBI Patrick Staley could have testified to that. And that's not me promising Mr. Medina that I was going to subpoena FBI agent Staley. That's Brian Seyfried. Okay, thank you, Mr. Gutierrez. Thanks, Judge. Case is taken under advisement. Thanks to both counsel.